UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
THELMA HIGUEROS, on behalf of herself
and as a class representative of all those
similarly situated,

                   Plaintiff,                  **MEMORANDUM OF**
                                               **DECISION AND ORDER**
                                               07CV0418 (ADS) (ETB)

      -against-


NEW YORK STATE CATHOLIC
HEALTH PLAN, INC.,
d/b/a FIDELIS CARE, INC.

                   Defendant.
--------------------------------------------------------X
**APPEARANCES**

**FRANK & ASSOCIATES, P.C.**
Attorneys for the Plaintiff
500 Bi-county Boulevard
Suite 112N
Farmingdale, NY 11735
        By:    Neil Frank, Esq., Of Counsel

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**
Attorneys for the Defendant
666 Third Avenue
New York, NY 10017
        By:    Jennifer B. Rubin, Esq.,
                 Jennifer F. DiMarco, Esq.,
                 Michael Scott Arnold, Esq.,
                 Of Counsel

**SPATT, District Judge:**

In this putative class-action, the plaintiff and proposed class representative, Thelma Higueros, seeks relief for the defendant's alleged failure to pay overtime wages in violation of Federal and New York State Labor Law and for termination of her employment, which she claims resulted from her complaints to superiors about the failure to pay such overtime wages.

## I.   BACKGROUND

Thelma Higueros was a Marketing and Sales Representative for the defendant, New York State Catholic Health Plan, Inc., d/b/a/ Fidelis Care, Inc. ("Fidelis"), from March 11, 2003 until December 16, 2005.  She alleges that she and other Fidelis employees were responsible for promoting and facilitating the enrollment of eligible persons into certain New York State sponsored health care programs, such as Medicaid, Family Health Plus, and Child Health Plus, in Suffolk and Nassau Counties. The sales representatives would visit work sites, homes, and community outreach programs to enroll qualifying persons.  Also, they would visit doctor's offices and churches to enlist them to serve as enrollment sites.  In addition, sales representatives provided assistance to enrollees in helping to complete applications and filing for reconsideration, renewal, and re-activation of benefits.

The plaintiff represents that she and other employees worked more than forty hours per week and were not appropriately compensated at a rate of one and one-half

2

times the regular rate of pay.  Higueros claims that she personally often worked up to eighty hours per week.  The plaintiff states that the overtime hours worked by herself and others similarly situated were for the sole benefit of the defendant and, at least in part, those hours were known to and authorized by the defendant.

With respect to this failure to pay employees for their overtime work, the plaintiff argues that the defendant was in violation of the federal Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 & 216, *et. seq.*, and certain New York State laws—N.Y. LAB. LAW § 216, §§ 650, *et. seq.*; the Wage and Payment Act, N.Y. LAB. LAW §§ 190, *et.* seq.; 12 N.Y.C.R.R. §§ 137-142-2.2; the New York State Minimum Wage Act; and supporting New York State Department of Labor regulations (collectively "the New York wage and hour law").  Further, the plaintiff alleges that she and other similarly situated persons, employed by the defendant between January 30, 2001 and January 30, 2007, qualified for overtime payment because they were "non-exempt" employees within the meaning of 29 U.S.C. § 213(a)(1) and the New York State Labor Law.

On December 1, 2007, the Court issued a Decision and Order on the defendant's motion to dismiss.  By that Order, the Court granted the defendant's motion to dismiss the plaintiff's claim for retaliation pursuant to the anti-retaliation provision of the FLSA, but denied the defendant's motion to dismiss the plaintiff's state law retaliation claim.  In addition, the Court denied the defendant's motion to

dismiss for lack of subject matter jurisdiction, finding that the defendant's Offer of Judgment did not moot the plaintiff's cause of action because the offer did not necessarily contemplate potential recovery on the plaintiff's retaliation claims and the Court retained jurisdiction due to the pending motion for authorization of a collective action and class certification.

Presently before the Court is the plaintiff's motion to conditionally authorize a collective action pursuant to FLSA § 216, along with an order directing the defendant to furnish the names and last known addresses of all prospective plaintiffs employed by the defendant from January 30, 2001 to January 30, 2007 and authorization to send opt-in notices to all prospective class members; to certify the plaintiff's state law claims as a class action; and to appoint the plaintiff's counsel as class counsel.  While this motion was pending, the plaintiff filed opt-in notices from three former Fidelis employees.

## II.     DISCUSSION

### A.     As to plaintiff's motion to certify a collective action pursuant to FLSA 216(b)

Section 216(b) of the FLSA provides that:

> . . . An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

4

29 U.S.C. § 216(b).

There are two conditions that must be satisfied to maintain a collective action under the FLSA.  First, the named plaintiffs and the proposed members of the class must be "similarly situated."  Second, the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in."  *See Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 81 (E.D.N.Y. 2008) ("[A] collective action brought under the FLSA is binding only upon those employees who affirmatively 'opt in' by giving consent in writing to become a party to the action.").

The burden upon the plaintiff in an FLSA collective action is substantially less than that required to maintain a class action pursuant to Fed. R. Civ. P. 23.  This is so because the determination under the FLSA is preliminary in nature and does not amount to a finding on the merits that the members of the proposed class are, indeed, similarly situated to the plaintiff.  *Id.* at 82; *Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007).  "[C]ourts have held that 'plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Sobczak*, 540 F. Supp. 2d at 362 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  In addition, the plaintiff need not submit evidence to establish that an FLSA violation occurred, but only that some "factual nexus" exists between the plaintiff and the potential class members.  *Sobczak*, 540 F. Supp. 2d at

5

362.

Courts frequently authorize collective actions "based upon employee affidavits setting forth [evidence of] a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." *Wraga v. Marble Lite, Inc.*, No. 05CV5038, 2006 WL 2443554, *2 (E.D.N.Y. Aug. 22, 2006); *Harrington v. Education Mgmt. Corp.*, No. 02CV0787, 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002) (finding that plaintiff satisfied his "modest preliminary burden" by submitting an affidavit stating that "he was regularly denied overtime pay, [and] his supervisors informed him that it was the defendants' policy not to pay [employees] overtime compensation").

Here, the plaintiff has met her burden in demonstrating a "factual nexus" between herself and other potential class members.  The plaintiff alleges that the plaintiff and others sharing the title of Sales and Marketing Representative all had similar duties and job descriptions, all worked similar hours, and were subjected to the same payment scheme in violation of FLSA.  (Higueros Decl. at ¶¶ 5–30).  In addition, three opt-in notices have already been filed in this action, by Daniel Mondesir, Fiordalisa Marte, and Shanita Barnes, tending to show that at least three other employees believe that they too were victims of the defendant's alleged illegal payment policy.  Further, the plaintiff testified at a deposition and stated in her declaration that she spoke with other sales representatives at office meetings, who also

complained about the defendant's failure to pay overtime wages.  (Higueros Deposition, 68:8–24); (Higueros Decl. at ¶¶ 19–30).

Also, one of the three "opt-in" plaintiffs, Fiordelisa Marte, has submitted an affidavit stating that she was employed by Fidelis as a Sales and Marketing Representative**;** she and all representatives known to her worked in excess of forty hours pers week**;** "more often than not [they] were not paid for overtime hours**;**" and she "had numerous and repeated conversations with [her] colleagues . . . regarding their failure to pay . . . overtime."  (Marte Aff. at ¶¶4–16).  Therefore, the defendant's argument that the plaintiff has not submitted sufficient evidence to make even the minimal factual showing required by the FLSA is unavailing.  *See Sobczak*, 540 F. Supp. 2d at 362 ("Defendants' argument that the affidavits are insufficient to satisfy the burden for a notice to be sent because they present mere conclusory allegations is inaccurate.  Courts in this Circuit regularly rely on such evidence to determine the propriety of sending a collective action notice.").

Having determined that the plaintiff has satisfied her burden for preliminary class authorization, the next step is to structure an "opt-in" notice for distribution to potential plaintiffs.  "No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain."  *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105–06 (S.D.N.Y. 2003).  Instead, the form of the notice is left to the discretion of the district

court. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482 (1989).

The plaintiff has not yet filed a proposed form of notice. The plaintiff shall file a proposed form within twenty days of the date of this Order, and any objections shall be filed within ten days thereafter. In addition, the defendant shall have ten days from the date of this order to provide plaintiffs with a list of all persons employed by the defendant as Marketing and Sales Representatives from January 30, 2001 through January 30, 2007.

**B.    As to the plaintiff's motion to certify a class action pursuant to Fed. R. Civ. P. 23**

In addition to the authorization of a collective action under the FLSA, the plaintiff seeks to certify a class action as to her New York wage and hour law claims pursuant to Fed. R. Civ. P. 23. "[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together." *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 204 (S.D.N.Y. 2007).

Before a class may be certified, Federal Rule 23 requires that all of the factors listed in Rule 23(a) be satisfied and that the proposed action meet at least one of the categories of Rule 23(b). In addition, courts have added a requirement that the class be reasonably identifiable or ascertainable. *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003). In determining whether to certify a class, the Court assumes the allegations in the complaint to be true, and takes a liberal rather

than a restrictive approach in determining whether the plaintiff satisfies these

requirements.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133

(2d Cir. 2001); *Caridad v. Metro-North Commuter RR*, 191 F.3d 283, 291 (2d Cir.

1999); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y.

1996).  While the Court must engage in a "rigorous analysis" to establish whether the

plaintiff has met its burden of proof as to certification, *Caridad*, 191 F.3d at 291, such

a determination must not evolve into a "preliminary inquiry into the merits."  *Eisen v.*

*Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).

       1.      The Rule 23(a) Requirements

Federal Rule 23(a) provides that a class action may be maintained only if:

> (1) the class is so numerous that joinder of all members is
> impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately
> protect the interests of the class.

       a.      Numerosity

Rule 23(a)(1), referred to as the numerosity requirement, requires that the class

be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P.

23(a)(1).  However, "[i]mpracticability does not mean impossibility of joinder, but

refers to the difficulty or inconvenience of joinder."  *In re Indep. Energy Holdings*

*PLC, Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).  The Second Circuit has

determined that numerosity may be presumed with as few as forty potential class members.  *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The plaintiff must "'show some evidence or reasonably estimate the number of class members.'"  *Torres v. Gristede's Operating Corp.*, No. 04CV3316, 2006 WL 2819730, at *12 (S.D.N.Y. Sept. 29, 2006) (quoting *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2001)).  Here, the plaintiff contends that the class consists of at least 695 identifiable class members.  The plaintiff arrives at this number based upon the defendant's response to Plaintiff's Interrogatory Number 2, in which the defendant states that "during the time Higueros and Fernandez [now Marte] were employed by Defendant, Fidelis employed approximately 695 Marketing Representatives in various categories."  The plaintiff contends that the number of potential class members is even greater because the class is not limited to only those employed by Fidelis at the same time as she and Marte.  Thus, the Court finds that the numerosity requirement is satisfied.

            b.      Commonality/Typicality

The commonality element of Rule 23(a)(2), requiring the plaintiff to demonstrate that common issues of law or fact exist and affect all class members, is considered a "minimal burden for a party to shoulder."  *Lewis Tree Service, Inc. v. Lucent Tech. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002).  Individual circumstances of

the class members may differ without precluding class certification if "common questions are at the core of the cause of action alleged." *Vengurlekar v. Silverline Tech., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003) (internal quotations and citations omitted).

The plaintiff has proposed a class "consisting of all current and former Sales and Marketing Representatives employed by Defendant from on or about January 30, 2001 through January 30, 2007, who were not paid overtime compensation to which they are entitled, plus interest and damages." The plaintiff alleges that all such individuals shared similar duties and responsibilities, and worked similar hours. Common questions of fact exist as to whether the defendant failed to pay overtime compensation and whether this failure was part of a systematic policy or practice to deprive employees of earned wages. Further, common questions of law exist as to whether the proposed class members were in fact entitled to overtime compensation and whether the defendant's alleged failure to pay overtime compensation violated the provisions of the New York wage and hour law. *See Torres*, 2006 WL 2819730 at*14 (finding the commonality requirement satisfied where all potential plaintiffs worked in non-management roles, were all subject to the same corporate policies, and all allegedly worked in excess of forty hours per week without receiving compensation, thereby creating common legal questions as to whether the defendant violated New York minimum wage and overtime regulations).

The typicality requirement, closely related to the commonality requirement, is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. . . . When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted).

Here, plaintiff contends that she and other Sales and Marketing Representatives were denied overtime compensation to which they were entitled as a result of the defendant's illegal policy to refuse to pay overtime. "Where class representatives allege that they were not paid overtime in violation of [New York] labor law and where the same legal and factual claims are being made for each individual class member . . . the typicality requirement is satisfied." *Torres*, 2006 WL 2819730, at *14 (internal quotations and citations omitted). In addition, the plaintiff alleges that she personally had conversations with several fellow Sales and Marketing Representatives who indicated the same dissatisfaction with Fidelis' failure to make overtime payments. *See Guzman v. VLM, Inc.*, No. 07CV1126, 2008 WL 597186, at *6 (E.D.N.Y. March 2, 2008) (finding typicality satisfied where plaintiff spoke to

numerous fellow employees who made similar claims regarding the employer's failure to pay minimum wage).

The defendant claims that Higueros' unrelated state law claim for retaliatory termination compromises the commonality and typicality factors because: (1) that individual claim is not typical of the class and threatens to become the focus of the litigation; and (2) defenses unique to the plaintiff surround her state law retaliation claim, creating the danger that the class will suffer if the plaintiff is pre-occupied with those defenses. However, the existence of plaintiff's single additional state law claim does not destroy the common questions pertaining to and the typicality of the plaintiff's class claims. *See Damassia v. Duane Reade, Inc.*, No. 06CV2295, 2008 WL 2201469, at *3 (S.D.N.Y. May 27, 2008) ("Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." (internal quotations and citations omitted)); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007) ("[I]ndividualized factual questions concerning the representative's claim will not necessarily bar class certification."); *Jankowski v. Castaldi*, No. 01CV0164, 2006 WL 118973, at *3 (E.D.N.Y. Jan. 13, 2006) (finding commonality intact where the named plaintiff raised allegations regarding both **a** class claim of underpayment of wages and his unrelated contention that "he was fired because of his age").

Further, the concern regarding susceptibility of the class representative's claims to unique defenses applies only to unique defenses to the class claim, not defenses to other matters.  In this regard, *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004), a case relied on by the defendant, is distinguishable.  In *Noble*, the defendant's unique defense to the plaintiff's class claims to the effect that the plaintiff was exempt from coverage under state labor law caused the court to find typicality lacking because the defense threatened to become the focus of the litigation likely requiring "a fact-intensive inquiry into the scope of [plaintiff's] responsibilities."  *Noble*, 224 F.R.D. at 343 (internal quotations and citations omitted).

In addition, in *Baffa v. Donaldson, Lifkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000), the Second Circuit affirmed the district court's determination that a proposed class representative's claims were atypical because her status as a sophisticated broker raised unique defenses to her class securities fraud claims.  Here, the unique defenses that the defendant posits as troublesome are limited solely to the plaintiff's non-class claim.  There is nothing in these cases that leads the Court to conclude that the defense to the plaintiff's retaliation claim renders her unpaid wage claims to be different than those of the other members of the class.  Indeed, even in the usual case, "[t]he relevant inquiry is not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense."  *Noble*, 224 F.R.D. at 339 (internal quotations and citations omitted).  The defendant's

contention that the plaintiff's retaliation claim and the defenses to that claim threaten to become the focus of the litigation are, at best, speculative.  In light of the relatively liberal construction to be given to the commonality and typicality requirements of Rule 23(a), the Court finds that these requirements remain satisfied despite the existence of plaintiff's additional retaliation claim.

Finally, the potential differences concerning damages does not vitiate the commonality and typicality of the class claims.  "[D]ifferences that do not destroy the underlying central and special claim presented by the [plaintiff] will not prevent a Court from find[ing] typicality in a Rule 23 class.  *Torres*, 2006 WL 2819730, at *14; *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) ("Differences concerning for whom any particular Plaintiff worked, or for what particular number of hours, cannot undermine the conclusion that each putative class member's claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability.").  Indeed, as the plaintiff claims that the defendant improperly failed to pay overtime to herself and others, who held the same job title and had similar duties, her state claims with respect to overtime compensation are exactly typical of the claims of putative class members.  *See Jankowski*, 2006 WL 118973, at *3.

c.      Adequacy of representation

Fed. R. Civ. P. 23(a)(4) requires adequacy of representation, so that "the representative parties will fairly and adequately protect the interests of the class."  In determining if a proposed representative will adequately serve the interests of the class, courts examine whether: "(1) plaintiff's interests are antagonistic to the interests of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa*, 222 F.3d at 60.   In addition, the Court may appropriately consider the "honesty and trustworthiness" of the proposed class representative. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). However, "[t]he inquiry . . . into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit."  *Jane B. by Martin v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987).

As an initial matter, the defendant does not dispute the qualifications of the plaintiff's attorneys to act as class counsel and the Court is satisfied, upon their declarations, that counsel is "qualified, experienced, and generally able to conduct the litigation."  *Olsen v. New York Cmty. Bancorp.*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005).

In addition, the defendant's contention that the plaintiff cannot serve as class representative because she lacks the credibility and trustworthiness necessary to

represent a class is without merit.  First, the defendant's argument that the plaintiff is

not an adequate representative because she was terminated for submitting false

enrollment documentation in the execution of her duties is unconvincing because these

are unproven assertions, which were rejected by the Administrative Law Judge

reviewing Higueros' unemployment insurance appeal.  *See Unemployment Insurance*

*Appeal Board Decision and Notice of Decision*, May 2, 2006, at 2.  Second, although

these allegations may properly be raised in opposition to the plaintiff's retaliation

claims, the Court declines to consider them here because they do not directly relate to,

or touch upon, the plaintiff's prosecution of the class claims.  *See Iglesias-Mendoza*,

239 F.R.D. at 372 (holding that the plaintiff's termination from employment for

misconduct was irrelevant to the question of adequate representation of claims

pursuant to the FLSA and New York wage and hour law); *Martin v. New York City*

*Dep't. of Soc. Servs.*, 117 F.R.D. at 71 (noting that improper conduct must touch upon

the prosecution of the lawsuit itself).

Less clear is the resolution of the defendant's contention that the plaintiff lacks

credibility because the allegations in her complaint vastly exaggerate the number of

hours she worked on behalf of Fidelis.  Specifically, the defendant points to the

assertion in plaintiff's complaint that she worked "seven days a week from 7 am to

11pm" and her later inconsistent statement that she was due no more than $35,000 in

straight overtime compensation (prior to doubling for liquidated damages).  In

response, Higueros states that the inconsistencies between her original complaint and her subsequent overtime calculations are the result of mere "errors" or "mathematical mistakes."  On balance, the Court finds that the inconsistencies and the potential exaggerations in the plaintiff's complaint do not amount to a clear case of purposeful deceit of the court.  *Compare Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 41 (E.D.N.Y. 2008) (allowing plaintiff to represent the class where she twice misstated the nature of her claim, but the record established that she corrected her misstatements and had requisite knowledge of the action), *and Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 125 (S.D.N.Y. 2001) (refusing to exclude representatives for lack of credibility where it was not clear that plaintiffs lied or fabricated testimony), *with Savino*, 164 F.3d at 87 (affirming determination of inadequate representation where proposed class representative's lack of credibility was illustrated by "differing accounts about the letters that form the very basis for his lawsuit"), *and Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983) (upholding decision to bar plaintiffs as class representatives where "testimony on an issue critical to one of their two causes of action was subject to sharp attack" and there were "fully justified doubts" regarding their credibility).  Thus, the defendant's argument on this basis is rejected.

Lastly, the defendant asserts that the plaintiff cannot serve as an adequate class representative because her retaliation claim and the defenses to this claim threaten to become the focus of the litigation, and such a development would be adverse to the

18

interests of the class.  As stated above, this assertion is speculative, at best, and there is no indication here that the plaintiff's interest in pursing her retaliation claim is in any way an impediment to the prosecution of the class wage and hour claims.  *See De La Cruz v. Gill Corn Farms*, No. 03CV1133, 2005 WL 5419056, at *4 (N.D.N.Y. Jan. 25, 2005) (finding proposed class representative's worker's compensation claim against the defendant was not indicative of any conflict of interest with the other potential class members, but denying certification on other grounds).  In addition, there is no indication that the plaintiff is using the vehicle of a class action to inappropriately advance her retaliation claim or as some form of retribution to the defendant.  *Cf. In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998) (denying approval as class representative where plaintiff "indicated that he intend[ed] to use this class action as a vehicle to obtain payment for his unrelated, individual claims against Merrill Lynch, Dean Witter and/or Bear Stearns" and intimated that he would accept settlement payment from "anyone," including other class members). Accordingly, the Court finds that Higueros does not have interests adverse to those of the class.

2.     Rule 23(b) Requirements

Having sufficiently satisfied all of the requirements of Rule 23(a), the plaintiff must also establish that this action is maintainable under one of the subsections of

19

Rule 23(b).  Here, the plaintiff seeks certification pursuant to Rule 23(b)(1)(A) or, alternatively, 23(b)(3).

Rule 23(b)(1)(A) provides that a class action may be maintained if "prosecuting separate actions by or against individual class members would create a risk of  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ."  Fed. R. Civ. P. 23(b)(1)(A).  The plaintiff contends that certification under this subsection is appropriate because "the entire Class, past, present and future employees, may be affected by this case, [and] the possibility of numerous individual suits warrants class certification."

The defendant asserts that even if there is a threat of numerous lawsuits, an action cannot be certified under this section where the plaintiff brings New York wage and hour claims and pursues the penalty of liquidated damages on the behalf of the class.  The defendant states that this is because N.Y. C.P.L.R. 901 prohibits a class action seeking the payment of a penalty unless specifically authorized by statute and although the New York Labor Law allows for the collection of liquidated damages, it does not authorize a class action seeking such a remedy.

N.Y. C.P.L.R. 901 sets forth the prerequisites to a class action maintained pursuant to New York law and provides that "unless a statute creating or imposing a penalty . . . specifically authorizes the recovery thereof in a class action, an action to

20

recover a penalty . . . may not be maintained as a class action."   Further, the New York Labor Law allows for recovery of liquidated damages, but it does not specifically authorize class actions.  In support of its argument, the defendant relies upon *Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006).  In *Lee*, the court noted that "courts in this district have certified Labor Law class actions on the condition that plaintiffs waive their right to liquidated damages."  *Lee*, 236 F.R.D. at 202.  However, the court held that even if the plaintiff waived liquidated damages, the class could not be certified under Rule 23(b)(1) because "the lack of an opt-out measure under this prong is unfair to any class members who would be bound by Plaintiff's waiver of the right to liquidated damages, made on all class members' behalf."  *Id.* at 204.

The plaintiff does not dispute the validity of this argument.  However, because the Court finds that certification is appropriate pursuant to the predominance inquiry of Rule 23(b)(3), it need not address the validity of maintaining a class action pursuant to Rule 23(b)(1)(A) in this instance.

Rule 23(b)(3) allows for class certification where "the court finds that questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for . . . adjudicating a controversy."

21

As an initial matter, the Court notes that unlike 23(b)(1)(A), New York C.P.L.R. 901 does not act as a bar to certification under this section because the plaintiff has manifested a willingness to waive the right to liquidated damages on behalf of the class.  Further, class members who wish to seek liquidated damages retain the ability to opt-out of the class.  (Higueros Deposition, 169:14–170:22); *see Ansoumana*, 201 F.R.D. at 95 ("Plaintiffs [offer] to waive any right to recover liquidated damages as a condition of being certified as a class; any who object may opt out of the class. New York law authorizes such a procedure.").  Accordingly, class certification will be conditioned on the plaintiff's waiver of liquidated damages.  *See Guzman*, 2008 WL 597186, at *11.  Also, any notices to the proposed class should advise that if they wish to seek liquidated damages under the New York Labor Law, they must opt-out of the class action.  *See id.*

    a.    Predominance

While the commonality requirement of Rule 23(a)(2) mandates that common questions of law or fact exist among the putative class members, the first prong of Rule 23(b)(3), also known as the predominance requirement, is more stringent and requires that such common questions be the focus of the litigation.  *See Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York, Inc.* 198 F.R.D. 41, 44 (E.D.N.Y. 2000).  In other words, the predominance requirement is used to test whether a class is "sufficiently cohesive to warrant adjudication by

representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 , 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997) (citing 7A Wright, Miller & Kane 518–19).  Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over and are more substantial than issues that are subject only to individualized proof.  *See In re Visa Check*, 280 F.3d at 136.

In this case, it is clear that the common questions as to the defendant's liability stemming from its alleged failure to pay overtime wages and whether such failure was part of a generalized practice will significantly predominate over the individualized questions surrounding the class claims, including those necessary to determine the amount, if any, of damages owing to each member of the class.  *See Jankowski*, 2006 WL 118973, at *4 ("It is well-established that individualized defenses or differing amounts of damages do not necessarily defeat predominance."); *Ansoumana*, 201 F.R.D. at 89 (finding that the issue of whether the defendant was liable for the payment of overtime wages predominated "over all other factual and legal issues presented, because each proposed . . . class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way, during the relevant time period").

The question of whether common issues with regard to the class claims predominate over individual issues arising from the prosecution of those claims is the

23

primary concern of the predominance analysis and the Court finds the standard satisfied.  However, the defendant opposes certification under this section based upon the prosecution of plaintiff's unrelated retaliation claim.  The defendant argues that Higueros' individual claim and Fidelis' defense to that claim will dominate over any questions of law of fact that the plaintiff may have in common with the putative class members.  The defendant supplies no factual or legal reason supporting this belief and the Court disagrees.

In the typical case, a claim affecting nearly 700 potential plaintiffs could reasonably be expected to dominate a separate, singular claim that does not pertain to the class.  In addition, the relief sought by the plaintiff on her retaliation claim is not antagonistic to the interests of the members of the class, rather it is a distinct matter that seemingly will proceed without impacting on the class claims for overtime compensation.  Further, as a practical matter, the certification of a class is limited to the New York wage and hour claims and may be continually re-examined by the Court.  If, at any point, the plaintiff's retaliation claim threatens to become a focus of the litigation, mechanisms exist by which the Court may separate the plaintiff's retaliation claim from the class claims.  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008) ("'After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.  If, moreover, evidence later shows that an affirmative defense is likely to bar claims against at least some class

24

members, then a court has available adequate procedural mechanisms.  For example, it

can place class members with potentially barred claims in a separate subclass, or

exclude them from the class altogether.'" (quoting *Smilow v. Southwestern Bell*

*Mobile Sys., Inc.*, 323 F.3d 32, 39–40 (1st Cir. 2003)).

> b.      Superiority

The second prong of Rule 23(b)(3), commonly referred to as the superiority

element, requires the Court to examine whether a class action is superior to other

methods of adjudication.  *See Vengurlekar*, 220 F.R.D. at 228.  In making this

determination, the Court may consider the following four factors:

> (A)    the class members' interests in individually controlling the prosecution
>        or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy
>        already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the
>        claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the plaintiff contends that the putative class consists of individuals

sharing the same employment duties and similar work schedules.  In addition, the

plaintiff alleges that the defendant's failure to pay her the overtime to which she was

entitled was part of a larger scheme in which it illegally sought to deny overtime

payment to all Sales and Marketing Representatives.  These issues are ripe for

adjudication in a single action.  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D.

144, 158 (S.D.N.Y. 2002) ("[T]he interests of justice will be well served by resolving

the common disputes of potential class members in one forum."); *see also Jankowski*, 2006 WL 118973, at *4 ("[T]he state law claims for allegedly unpaid overtime clearly arise out of the same nucleus of operative facts as the FLSA claims, which are going to be adjudicated in this Court in any event." (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 393 (W.D.N.Y. 2005).  Accordingly, the Court finds that a class action is a superior method of adjudication for the New York wage and hour claims.

        3.      The Implicit Requirement of Ascertainability

 "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *In re MTBE Prods. Liability Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (internal quotations and citations omitted).  Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case. *See id.*

        Fidelis responded to Plaintiff's Interrogatory Number 2 by stating that it employed approximately 695 Sales and Marketing Representatives at the same time as Higueros and Marte.  Presumably, if Fidelis was able to ascertain in the first instance the number of persons employed as Sales and Marketing Representatives during this period, it is likewise capable of ascertaining the number of persons so employed throughout the entire class period.  Further, it is reasonable to conclude that these individuals can readily be identified by personnel records and tax returns.  *See Jankowski*, 2006 WL 118973, at *5.  Thus, this requirement is satisfied.

4.      Appointment of Class Counsel Pursuant to Rule 23(g)

Rule 23(g) requires that a court certifying a class must appoint class counsel. "In appointing class counsel, the [C]ourt must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).  In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

As noted above, plaintiff's counsel Neil M. Frank, Esq., and his firm, Frank & Associates are experienced in the field of labor and employment litigation and have litigated numerous class and collective actions in this field.  Further, the Frank firm has represented the plaintiff in this action from its inception and has likely performed a comprehensive investigation of the claims.  (Aff. of Neil M. Frank, Esq.).

### III.    CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the plaintiff's motion to authorize notice of a collective action pursuant to 29 U.S.C. § 216(b) is granted; and it is further

**ORDERED**, that the defendant shall, within ten days of the date of this Order, furnish to the plaintiff a list of all persons employed as Marketing and Sales Representatives during the period from January 30, 2001 through January 20, 2007; and it is further

**ORDERED**, that the plaintiff, within twenty days of the date of this Order, shall submit to the Court a proposed form of notice pursuant to 29 U.S.C. § 216(b), any objections shall be filed within ten days thereafter; and it is further

**ORDERED**, that the plaintiff's motion to certify a class action as to her state wage and hour law claims is granted, on the condition that the plaintiff waive her claim for liquidated damages under New York Labor Law, and the following class is hereby certified:  "all current and former Sales and Marketing Representatives employed by Defendant from on or about January 30, 2001 through January 30, 2007; and it is further

**ORDERED**, that the plaintiff, within twenty days of the date of this Order, shall submit to the Court a proposed class action notice, which should fully inform potential class members that, if they wish to seek liquidated damages under the New

York Labor Law, they must opt-out of the class action.  Any objections to the

proposed class action notice must be filed within ten thereafter; and it if further

**ORDERED**, that the plaintiff's counsel is hereby appointed as class

counsel.

**SO ORDERED.**

Dated: Central Islip, New York
July 21, 2008

    _/s/ Arthur D. Spatt_____
    ARTHUR D. SPATT
    United States District Judge