UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THELMA HIGUEROS, on behalf of herself
and as class representative of all those                          No. 07 Civ. 0418 (ADS)(ETB)
similarly situated,

                Plaintiff,

                                                        **DECLARATION**

    -against-

NEW YORK STATE CATHOLIC
HEALTH PLAN, INC.,
d/b/a FIDELIS CARE, INC.,

                Defendant.
-------------------------------------------------------------X

       I, MARK L. LANE, pursuant to 28 U.S.C. §1746, declare under penalty of perjury under

the laws of the United States of America that the foregoing is true and correct:

       1.     I have served as President and Chief Executive Officer of New York State

Catholic Health Plan, Inc., d/b/a Fidelis Care New York ("Fidelis") since 1996.  I submit this

Declaration in Opposition to Plaintiffs' June 30, 2009 Motion for Miscellaneous Relief pursuant

to Federal Rules of Civil Procedure 23 and 26(c) and 29 U.S.C. §216(b), and Plaintiffs'

subsequent July 2, 2009 Motion Pursuant to Federal Rule of Civil Procedure 23(d) (the "Rule 23

Motions").

       2.     I was both surprised and perplexed by Mr. Sutter's allegations and the Rule 23

Motions, especially considering the course of action Fidelis took to avoid what Mr. Sutter now

alleges.  I have taken no action during this lawsuit to directly or indirectly influence a marketing

representative's decision to participate in this case.  On the one occasion I addressed the

marketing representatives employed at each of Fidelis' regional offices in November 2008, I

consistently conveyed to Fidelis' employees that their employment status would not be affected

by their decision to participate in the lawsuit.  I also sought to foster clarity -- to seek to ensure that the marketing representatives completely understood the process established by the Class Notice.

3.      Mr. Sutter, whom I have never met, attended a meeting at which I discussed the Class Notice on November 10, 2008 and, more than six months later, has come forward with his allegations concerning that meeting.  My surprise at the timing of Mr. Sutter's allegations prompted me to inquire of Fidelis' Human Resources Department whether there had been any recent developments in Mr. Sutter's employment with Fidelis.  The accompanying declaration of Diane Tucker, Fidelis' Vice President for Human Resources, identifies those recent developments, which, I believe, account for the making of this unfounded motion at this time, more than six months after the November 10, 2008 meeting in question.

The November 2008 Meetings

4.      Shortly after the Class Notice was disseminated, I was advised by Fidelis' Human Resources Department that Fidelis marketing representatives who had received the Class Notice had raised questions about the Notice with their supervisors.  Given that certain marketing representatives had begun to raise questions about the notice, I, and Fidelis management with whom I conferred, believed it was important to meet with the marketing representatives regarding the notice for several reasons.

5.      Fidelis was very concerned that the notice to its 168 marketing representatives would distract and scare its employees.  Also, I believed that, because the class notice contained two reply forms – one to opt in to one claim and a second to opt out of another claim – it could appear overly complicated to the marketing representatives, individuals who presumably never joined a class action in the past.  Fidelis also wanted to make sure that its employees were fully

aware that they could feel free to participate in the lawsuit without fear of retaliation from Fidelis.

6.      It was not unusual for me to meet with the marketing representatives as a group. Several times each year, I conduct Fidelis "town hall" meetings with employees, including the marketing representatives at Fidelis' four offices around New York State (the Greater Metropolitan Regional Office in Rego Park, the Northeast Regional Office in Albany, the Central Regional Office in East Syracuse and the Western Regional Office in Amherst). The purposes of these meetings is to impart information about Fidelis' business, to announce new initiatives, and to motivate Fidelis' employees with respect to our mission. I generally conduct these town hall meetings three to four times per year, assisted by Fidelis Executive Vice President/Chief Operating Officer, Rev. Patrick J. Frawley, and Fidelis Vice President for Human Resources, Diane Tucker.   Either Fidelis marketing representatives will attend the general town hall meeting or, because of seating limitations, a separate town hall meeting will be scheduled for them. As a result, all of the Fidelis marketing representatives are accustomed to meeting on a group basis with me.

7.      Before meeting with the marketing representatives about the class action, I addressed their supervisors, on November 7, 2008.   This was the first time any formal information regarding the lawsuit had been provided to the marketing supervisors.  Because Fidelis was concerned that the marketing representatives would continue to ask their supervisors questions about the lawsuit, it was important that the supervisors be instructed that they were not to discuss any aspect of the lawsuit with the employees. It was also very important that the supervisors understood that they were to completely divorce the lawsuit from their supervision of marketing representatives -- that one was to have no impact whatsoever on the other. I also

3

instructed the supervisors to direct any marketing representative who had questions or concerns to Diane Tucker, Fidelis' Vice President for Human Resources, Rev. Patrick Frawley, Fidelis' Executive Vice President and Chief Operating Officer, or Robert Pigott, Fidelis' Chief Legal Officer.

8.      After speaking with the supervisors, I met with the marketing representatives in the various Fidelis offices over the course of three days.  On the morning of November 10, 2008, I held a meeting with marketing representatives employed at Fidelis' Northeast Regional Office in Albany, New York, and, in the afternoon later that day, I held a meeting with marketing representatives employed at the Central Regional Office in East Syracuse, New York.  On November 11, 2008, I met marketing representatives employed at Fidelis' Western Regional Office in Amherst, New York.  On November 13, 2009, I met with marketing representatives employed at Fidelis' Greater Metropolitan Regional Office in Rego Park, New York.  Father Frawley, Ms. Tucker, and Mr. Pigott accompanied me to all four meetings.

9.      Because I wanted to make sure that my statements at the meeting with the marketing representatives would be consistent, accurate  and clear, I used the talking points attached as Exhibit A to this Declaration as the guideline for my discussion with them.  Some of the points I made included explaining that:

- Fidelis was limited in its ability to communicate with the marketing representatives regarding the class action, and, therefore, (i) supervisors would not speak with them about the lawsuit, (ii) any questions regarding the notice should be directed to Ms. Tucker, Father Frawley or Mr. Pigott, and (iii) the marketing representatives could also contact Plaintiffs' counsel, Frank & Associates, whose contact information was provided in the class notice.

- Whether or not the marketing representatives participated in the lawsuit would have no effect on their employment, as participation in the lawsuit would have no impact on job security or job performance.

- Marketing representatives had the right to participate if they wanted to.

10.     I also spent some time discussing Fidelis' overtime policy to re-affirm that each marketing representative understood the overtime policy, and had an opportunity to ask questions about the policy if they did not understand it.

11.     I further explained what the instructions in the class notice meant. I explained which form the marketing representatives should return if they wanted to participate in the lawsuit and which form they should return if they did not. Thus, I explained that (i) if only the federal law claim form were returned, a class member would participate in both the federal and the state law claim, (ii) if only the state law claim form were returned, a class member would not participate in either claim, (iii) if neither form were returned, a class member would participate in the state law claim, but not the federal law claim and (iv) if both forms were returned, a class member would participate in the federal but not the state law claim.

12.     At no time during the meeting did I or anyone else from Fidelis tell the marketing representatives that they should opt out of the lawsuit, ask them to sign an opt-out form, or hand out opt-out forms. No one threatened the marketing representatives' job security. To the contrary, I emphasized Fidelis' anti-retaliation policy and explained that participation in the lawsuit would have absolutely no effect on a marketing representative's employment status with Fidelis.

13.     In addition to those meetings, at no point during this lawsuit have I ever asked any marketing representative to sign an "opt-out form" or refrain from signing a Consent to

Joinder, or otherwise said or done anything about their decision to participate or not participate in this case.   At no point have I ever asked anyone at Fidelis to ensure that a marketing representative signs an "opt-out form" or refrain from signing a Consent to Joinder, or to otherwise pressure them against participating in this case.

Dated: Rego Park, New York
      July 24, 2009

MARK L. LANE

# EXHIBIT A

*11/07/2008*

# HIGUEROS ACTION

## Meeting with Class Members – Talking Points

- Lawsuit that involves Fidelis' Sales and Marketing Representatives

  - Notice going out by mail to individuals who worked as Fidelis' Sales and Marketing Representatives at any time between January 30, 2001 and January 30, 2007

- Class action lawsuit

  - Lead plaintiff in this lawsuit – the person who brought the case

    - Former Fidelis Sales and Marketing Representative named Thelma Higueros.

  - She represents a class of individuals – in this case, Fidelis marketing reps from 1/01 to 1/07 – that she alleged were treated the same way she was

  - At this point, Court is allowing the case to go forward as a class action and is allowing her to respesent the class members

- ▪ But Court has **not** made any finding on the merits of the case – that is, whether or not she has proved her claims

- Higueros claims that she and others at Fidelis were regularly not paid for overtime that Fidelis knew they worked.

- Fidelis denies that it didn't pay its marketing representatives overtime.

- Discuss general overtime practice
  - o Employees expected to list on their time sheets all the hours they have worked
  - o Fidelis pays them for those hours.
  - o Employees required to comply with the policy in the Employee Handbook requiring supervisor pre-approval before working overtime.
    - ▪ Employees always paid for overtime
    - ▪ Corrective action for working overtime without pre-approval

2

- Fidelis is contesting Higueros' overtime claim

  o Fidelis believes that it complies in all respects with all applicable state and federal laws in all circumstances, including employment matters.

  o Ultimately, the Court will decide the issue.

## Higueros' Overtime Claims

- Ms. Higueros

  o First asserted in this lawsuit that she performed various services as a marketing representative "7 days a week from 7 am to 11 pm" and that "[she] and others often worked up to eighty (80) hours per week over seven days a week."[1]

  o Later reduced her claim as to the number of hours she regularly worked to "Approximately four (4) hours of overtime each day at home after her regular work day ended"[3]

---

[1] Complaint, dated January 19, 2007 at 7-8 (unnumbered "FACTS" paragraph).
[3] Letter from Frank & Associates, P.C. to Judge Spatt, dated February 29, 2008, citing Higueros Deposition pp. 148 & 151-53.

- ▪ Would amount to an additional 20 hours per week beyond the regular 37. 5 hour week, for a total of approximately 57.5 hours week.

- Fidelis has asserted

  - ○ These claims are not accurate

  - ○ Fidelis paid Ms. Higueros for all overtime hours that were reflected on her time sheets.

## Discussing the Case

- Questions

  - ○ Bob Pigott, our Chief Legal Officer

  - ○ Diane Tucker, the Head of Human Resources

  - ○ Father Frawley.

- Limited group to answer questions

  - ○ Need to provide accurate and appropriate information.

  - ○ Supervisors have been asked to direct you to Bob, Diane or Father

4

- If you join the class

    o Unless you hire your own lawyer

        ▪ You will be represented by Frank & Associates,  You can them ask Frank & Associates any questions you have.

## **The Notices and Reply Forms**

- Notice includes two reply forms.

    o Federal Claim – Form #1

        ▪ Consent Form that relates to the claims in the case under federal law.

            • If you sign and return the Consent Form, you will be joining the case as to the Federal claims.

                o Joining the case means that you will designate Thelma Higueros as class representative and "as your agent to make decisions on your behalf concerning the litigation."  You will

be bound by the result in the case, whether it is favorable or unfavorable.

- Work on lawsuit must be done on own time

- State Law Claim – Form #2

  - Return form if you do not want to participate

  - Unlike the Federal case, if you don't sign and return it, you **will** be joining the case as to the state law claims in the same way as if you sign the consent form for the Federal claims.

- Non-participation in lawsuit

  - Return State law form to opt out
- Participation
  - Return federal law form

- Consequences of doing nothing

- You will be participating in the state case, but not the federal case.

  o Entirely your decision

    - Be honest

    - Don't make decision lightly

## <u>No Effect on Employment/No Retaliation</u>

- Whether or not you participate in this lawsuit will have no effect on your employment at Fidelis.

  o Will not be fired

    - Employees have a right to participate if they desire to

  o Will be judged as you always have been according to your performance

- Fidelis will keep the lawsuit and your performance as two entirely separate things.

- Confident that, while this matter is going on, we can continue to have the strong, supportive working relationship that we

have always had with our dedicated, hard-working Sales and

Marketing Staff.