UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THELMA HIGUEROS, on behalf of herself
and as class representative of all those                    No. 07 Civ. 0418 (ADS)(ETB)
similarly situated,

        Plaintiff,

  -against-

NEW YORK STATE CATHOLIC
HEALTH PLAN, INC.,
d/b/a FIDELIS CARE, INC.,

        Defendant.
------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO
# PLAINTIFFS' MOTIONS FOR RULE 23(d) RELIEF

MINTZ LEVIN COHN FERRIS GLOVSKY and POPEO, P.C.
666 Third Avenue
New York, New York 10017
(212) 935-3000

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS ........................................................................................................................................ 2

    A.    Fidelis Meets With Its Supervisors and Marketing Representatives After Frank & Associates Mails the Class Notices ............................................................................ 2

    B.    Once the Class Notice Periods Concluded, Fidelis Notified Frank & Associates Whenever it Wished to Communicate With Class Members ................................... 6

    C.    Mr. Sutter Alleges that Fidelis Pressured Him to Opt Out of the Class Action ........... 6

    D.    Frank & Associates Seeks Rule 23(d) Relief .............................................................. 7

ARGUMENT .............................................................................................................................. 8

    I.    RULE 23(d) PROTECTS CLASS MEMBERS AGAINST ONLY COERCIVE, ABUSIVE OR MISLEADING COMMUNICATIONS ............................................... 8

    II.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE A "CLEAR RECORD" OF COERCIVE, ABUSIVE, OR MISLEADING BEHAVIOR BY FIDELIS OR OTHERWISE DEMONSTRATE THAT FIDELIS INFLUENCED POTENTIAL CLASS MEMBERS' DECISIONS TO PARTICIPATE IN THE CLASS ACTION .................................................................................................. 12

CONCLUSION .......................................................................................................................... 16

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Basco v. Wal-Mart Stores, Inc.*,
  00 Civ. 3184, 2002 WL 272384 (E.D. La. Feb. 25, 2002) ..................................................... 11

*Bell v. Addus Healthcare, Inc.*,
  06 Civ. 5188, 2007 WL 2752893 (W.D. Wash. Sept. 19, 2007) ............................................... 9

*Belt v. Emcare, Inc.*,
  299 F. Supp. 2d 664 (E.D. Tex. 2003) .................................................................................... 12

*Bowens v. Atlantic Maintenance Corp.*,
  546 F. Supp. 2d 55 (E.D.N.Y. 2008) ....................................................................................... 12

*Burrell v. Crown Central Petroleum, Inc.*,
  176 F.R.D. 239 (E.D. Tex. 1997) ....................................................................................... 13, 14

*Dziennik v. Sealift, Inc.*,
  05 Civ. 4659, 2006 WL 1455464 (E.D.N.Y. May 23, 2006) .................................................... 9

*Equal Employment Opportunity Commission v. Morgan Stanley & Co., Inc.*,
  206 F. Supp. 2d 559 (S.D.N.Y. 2002) ............................................................................. 9, 10, 15

*Georgine v. Amchem Products, Inc.*,
  160 F.R.D. 478 (E.D. Pa. 1995) ..................................................................................... 11, 13, 15

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) .............................................................................................................. 8, 9, 10

*Hampton Hardware, Inc. v. Cotter & Co., Inc.*,
  156 F.R.D. 630 (N.D. Tex. 1994) ............................................................................................ 13

*In re FedEx Ground Package System, Inc. Employment Practices Litigation*,
  06 Civ. 528, 2007 WL 3036891 (N.D. Ind. Oct. 12, 2007) ...................................................... 9

*In re Visa Check/Mastermoney Antitrust Litig.*,
  96 Civ. 5238, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) .................................................. 10

*Jenifer v. Delaware Solid Waste Authority*,
  98 Civ. 270, 1999 WL 117762 (D. Del. Feb. 25, 1999) .......................................................... 11

*Jones v. Jeld-Wen, Inc.*,
  250 F.R.D. 554 (S.D. Fla. 2008) .............................................................................................. 10

*Kleiner v. First Nat'l Bank of Atlanta,*
   751 F.2d 1193 (11th Cir. 1985) ......................................................................................10, 13

*McLaughlin v. Liberty Mutual Insurance Co.,*
   224 F.R.D. 295 (D. Mass. 2004) ................................................................................11, 13, 15

*Rossini v. Ogilvy & Mather, Inc.,*
   798 F.2d 590 (2d Cir. 1986) ..................................................................................................9

*Sjoblom v. Charter Communications, LLC,*
   07 Civ. 0451, 2007 WL 5314916 (W.D. Wis. Dec. 26, 2007) ..........................................12

*Sorrentino v. ASN Roosevelt Center, LLC,*
   584 F. Supp. 2d 529 (E.D.N.Y. 2008) .................................................................................9

*Ralph Oldsmobile, Inc. v. General Motors Corp.,*
   99 Civ. 4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ............................................10

*Romano v. SLS Residential Inc.,*
   253 F.R.D. 292 (S.D.N.Y. 2008) ..............................................................................10, 12, 14

*Wang v. Chinese News Daily, Inc.,*
   236 F.R.D. 485 (C.D. Cal. 2006) ........................................................................................10

## FEDERAL STATUTES AND RULES

29 U.S.C. § 216(b) ........................................................................................................................7

Fed. R. Civ. P. 23 ..........................................................................................................7, 9, 10, 13

Fed. R. Civ. P. 23(d) ........................................................................................................*in passim*

Fed. R. Civ. P. 26 ..........................................................................................................................8

Fed. R. Civ. P. 26(c) .....................................................................................................................7

Rule 37.3 of the Local Rules for the Eastern District of New York ...........................................8

Defendant New York State Catholic Health Plan, Inc., d/b/a Fidelis Care New York ("Fidelis"), respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Rule 23(d) Motions.

## PRELIMINARY STATEMENT

On Friday, November 7, 2008, Class Counsel for Plaintiffs, Frank & Associates, mailed out more than 700 class action notices to eligible class members, 168 of which were sent to current Fidelis employees. As a result, on Monday, November 10, 2008, a segment of the Fidelis workforce was placed in the position of deciding whether to participate in an overtime class action lawsuit against Fidelis. The practical consequence of this mailing was that on that same Monday and for several days thereafter, Fidelis supervisors and managers would be interacting with marketing representatives who had just learned about the lawsuit, and who undoubtedly would have questions and concerns about the allegations and instructions contained in the class notice.

Confronted with this reality, but wanting to ensure that its marketing representatives understood the class notice process, including that they knew they were free to participate in the class action without risk of retaliation, Fidelis thought it was necessary to speak with its marketing representatives, especially since approximately 40% of the marketing representatives employed at that time had received class notices.

Fidelis has at all times acted in a careful and deliberate manner, ever-mindful to avoid *any* direct or indirect influence over its employees' decisions to opt into the Fair Labor Standards Act collective action or opt out of the New York State Labor Law class action, or otherwise affect their decisions whether or not to participate in this case. Contrary to current Fidelis employee Jerry Sutter's claims, Fidelis never asked its employees to sign opt-out forms or conditioned continued employment on the signing of an opt-out form. As set forth in the

1

Declarations submitted with this Memorandum of Law in Opposition, Mr. Sutter's claims are unsupported by the facts.

By holding group meetings with the marketing representatives, Fidelis took steps to ensure that they understood that they were free to participate in this class action, and that Fidelis would take no retaliatory action against them for any decision to participate. The meetings Fidelis' President and Chief Executive Officer, Mark Lane, conducted with the marketing representatives were fully in keeping with his practice of holding three to four group meetings annually with all Fidelis staff. Plaintiffs have failed to establish the required "clear record" of coercive behavior by Fidelis, and accordingly, the Court should deny Plaintiffs' requested Rule 23(d) relief, including their request to void each opt-out form submitted in this action.

## FACTS

### A. Fidelis Meets With Its Supervisors and Marketing Representatives After Frank & Associates Mails the Class Notices

Shortly after the Class Notice was disseminated, Fidelis conducted separate meetings with supervisors and employees (*see* Declaration of Mark Lane, dated July 24, 2009 ("Lane Decl."), at ¶¶4-5). Fidelis' President and Chief Executive Officer, Mark Lane first conducted meetings with his supervisors to instruct them not to discuss the lawsuit with the marketing representatives (*Id.* ¶7). Specifically, Mr. Lane told the supervisors "to divorce completely the lawsuit from their supervision of marketing representatives – that one was to have no impact whatsoever on the other" (*Id.*). He also instructed the supervisors that they should direct any questions they did receive from marketing representatives regarding the lawsuit to Executive Vice President and Chief Operating Officer, Rev. Patrick J. Frawley, Fidelis Vice President for Human Resources, Diane Tucker, and/or Fidelis Chief Legal Officer, Robert Pigott (*Id.*).

2

After meeting with the supervisors, Mr. Lane then conducted group meetings with Fidelis' marketing representatives (*Id.* ¶8). The marketing representatives would find nothing unusual in Mr. Lane's addressing them as a group. He had traveled to these offices regularly in the past to conduct meetings with marketing representatives to discuss Fidelis' business, announce new initiatives and to motivate Fidelis employees with respect to its mission (*Id.* ¶6). The November, 2008 meetings took place at the employees' primary office locations over the course of three days (*Id.* ¶8). Specifically, on November 10, 2008, Mr. Lane conducted a meeting with marketing representatives employed at Fidelis' Northeast Regional Office in Albany, New York, and later that afternoon, he conducted another meeting with marketing representatives employed at the Central Regional Office in East Syracuse, New York (*Id.*). On November 11, 2008, Mr. Lane conducted a group meeting with marketing representatives employed at Fidelis' Western Regional Office in Amherst, New York (*Id.*). On November 13, 2008, Mr. Lane conducted another group meeting for marketing representatives employed at Fidelis' Greater Metropolitan Regional Office in Rego Park, New York (*Id.*). Father Frawley, Ms. Tucker and Mr. Pigott also accompanied Mr. Lane to the meetings (*Id.*).

At no point during the meeting did Mr. Lane engage in any effort to coerce employees to sign opt-out forms or to avoid signing the opt-in forms (*Id.* ¶¶2, 12-13). At no time did Mr. Lane tell any marketing representative to sign an opt-out form and at no time did he present any marketing representative with an opt-out form to sign (*Id.* ¶¶12-13). Instead, Mr. Lane took the opportunity to explain to the marketing representatives that they were free to participate in the class action and that Fidelis would not take any action whatsoever against any marketing representative deciding to participate in the class action (*Id.* ¶¶2, 9, 12-13). Mr. Lane also addressed the following points:

3

- He explained that marketing representatives could contact Frank & Associates, class counsel, directly (*Id.* ¶9).

- He explained that Fidelis supervisors or managers would not discuss anything about the case with marketing representatives, and that marketing representatives could direct questions to Ms. Tucker, Father Frawley, or Mr. Pigott (*Id.*).

- He explained what the instructions in the class notice meant, including what forms they should complete if they wanted to participate in the lawsuit, and what forms they should complete if they did not wish to participate in the lawsuit (*Id.* ¶11).

- He expressed to the marketing representatives that participation in the lawsuit would not have any effect on their employment, including no impact on their job security or job performance (*Id.* ¶¶9, 12).

- He discussed Fidelis' overtime policy to re-affirm that each marketing representative understood the policy and that they had the opportunity to ask questions if they did not understand the policy (*Id.* ¶10) (*see also* Exhibit A to Lane Decl. attaching Mr. Lane's talking points).

Mr. Lane did not make any comment that any marketing representative could have reasonably interpreted as requiring him or her not to join, or otherwise participate in, the lawsuit. In fact, one of the purposes of the meeting was to communicate precisely the opposite -- that Fidelis would not be interfering at all (*Id.* ¶¶2, 9, 12-13).

Not one individual in attendance at any of those meetings -- except, apparently and quite belatedly, for Mr. Sutter -- came away from the meeting feeling pressured to sign an opt-out form. To the contrary, Fidelis employees who attended the meeting with Mr. Sutter have stated that Mr. Lane expressed at the meeting that the decision to join the lawsuit was theirs alone and that Fidelis would not retaliate in any way if they decided to join the lawsuit (*See e.g.* Declaration of Shelly Durse, dated July 23, 2009 ("Durse Decl."), at ¶¶6-9; Declaration of Edward Reilly, dated July 24, 2009 ("Reilly Decl."), at ¶¶4-6; Declaration of David Sutton, dated July 23, 2009 ("Sutton Decl."), at ¶¶5-6, 8-9; and Declaration of Heather Williams, dated July 27, 2009 ("Williams Decl."), at ¶¶6-8).

4

Subsequent to the meetings, Mr. Lane never asked any marketing representative to sign an opt-out form or to refrain from signing a Consent to Joinder, and he never otherwise attempted to influence any marketing representative's decision to participate in the class action (Lane Decl., ¶13). Further, Mr. Lane never directed any other Fidelis employee to influence any marketing representative's decision to sign an opt-out form or to refrain from signing a Consent to Joinder, or to otherwise influence the marketing representative's decision to participate in the class action (*Id.*).

One hundred thirty-six current employees decided to opt out of the class action on various dates over the two-month notice period. Twenty-seven current employees decided against submitting opt-out forms making them part of the New York State Labor Law class, and one employee decided to affirmatively join the Fair Labor Standards Act ("FLSA") collective action. Except to defend against these Rule 23(d) Motions, Fidelis has not communicated with any of its employees regarding this lawsuit or their decision to participate in this lawsuit after the November 2008 meetings took place, including after the two class notice periods expired. In defending against these Motions, Ms. Tucker contacted only a sample of marketing representatives who attended the Northeast Regional Office meeting with Mr. Sutter in Albany. Specifically, Ms. Tucker contacted Shelly Durse, Edward Reilly, David Sutton and Heather Williams to address Mr. Sutter's allegations and more generally to inquire as to the circumstances surrounding the November meetings at the Albany office (Declaration of Diane Tucker, dated July 30, 2009 ("Tucker Decl."), at ¶7).

### B. Once the Class Notice Periods Concluded, Fidelis Notified Frank & Associates Whenever it Wished to Communicate With Class Members

Fidelis has scrupulously refrained from contacting individual class members even where there was good reason to contact them (e.g. after they expressed that although they signed a Consent to Joinder or failed to file an opt-out form, their true intention was not to participate in the lawsuit). As described in greater detail in the accompanying Declaration of Jennifer F. DiMarco, dated July 30, 2009 ("DiMarco Decl."), on three occasions, class members who had mailed Consent to Joinder forms informed plaintiffs' counsel that they actually did not wish to participate in the lawsuit. Fidelis has refrained at all times from communicating with these class members entirely except, with the permission of plaintiffs' counsel, to hand one of these class members a new Notice of Withdrawal -- without commenting on or discussing the substance of the Notice -- after previous attempts by plaintiffs' counsel to provide the Notice of Withdrawal failed (DiMarco Decl., at ¶¶3-6; Exs. A-B). Such above-board, punctilious conduct is strikingly at odds with the type of conduct alleged by Mr. Sutter.

### C. Mr. Sutter Alleges that Fidelis Pressured Him to Opt Out of the Class Action

Jerry Sutter, an employee based out of Fidelis' Albany office, now, seven months after he attended the November 10, 2008 meeting, claims that, at the meeting, Fidelis asked him sign an "opt-out" form, and that he "felt intimidated" and believed Fidelis conditioned his "continued employment . . . upon signing the form" (Sutter Aff., ¶¶6-7). That is the extent of Mr. Sutter's allegations. He provided no further details about the meeting he attended, including the specifics of what Mr. Lane said to him and others. He failed to state whether he expressed any concerns at the meeting, whether he spoke to any other employees about whether they felt intimidated or feared for their jobs, or whether he spoke to Fidelis management about his belief that Fidelis was seeking to influence his decision to opt out of the class action. Most notably, Mr. Sutter failed to

6

explain why it took him seven months to complain to Frank & Associates about Fidelis' alleged interference (*see* Romero Aff., ¶11).

When Mr. Lane learned of Mr. Sutter's allegations, he was, understandably, surprised and perplexed (Lane Decl., ¶2), prompting him to ask Ms. Tucker whether "there had been any recent developments in Mr. Sutter's employment with Fidelis" (*Id.* ¶3). Subsequent to Mr. Lane's request, Ms. Tucker learned that on May 28, 2009, only three weeks prior to the filing of the present Motions, Fidelis had provided Mr. Sutter with a Corrective Action notice advising him of poor performance and the steps he should take to improve his performance (Tucker Decl. ¶3). Ms. Tucker also learned that on May 12, 2009, Mr. Sutter had also received a poor performance evaluation (*Id.*). It certainly appears that Mr. Sutter came forward, seven months after the November 10, 2008 meeting, only after he perceived that his job was in jeopardy because of unrelated poor performance.

### D. Frank & Associates Seeks Rule 23(d) Relief

At no time before making the Motions did Frank & Associates bring Mr. Sutter's concerns to the attention of Fidelis or its attorneys. Instead, Frank & Associates opted to file the present Motions with the Court. If Frank & Associates had contacted Fidelis' counsel, it would have learned that Fidelis would not have objected to Mr. Sutter withdrawing his opt-out notice and filing a Consent to Joinder even though the class notice periods had long since expired. Indeed, Fidelis has not objected in any instance where Frank & Associates has filed a Consent to Joinder subsequent to the expiration of the class notice periods (DiMarco Decl., ¶7, Exs. C-D).

On June 30, 2009, Plaintiffs filed what they termed a "Motion for Miscellaneous Relief Pursuant to Fed. R. Civ. P. 23 and 26(c) and Pursuant to 29 U.S.C. § 216(b)" (Docket Nos. 203-206). The notice of motion and memorandum of law referenced Rule 26(c), but failed otherwise to address its applicability to the relief actually requested by Plaintiffs. Plaintiffs also failed to

7

comply with Rule 26 and its corresponding Eastern District Local Rule 37.3, both of which require a good faith conferral with opposing counsel prior to filing a motion. Two days later, on July 2, 2009, Plaintiffs filed another motion with the Court, this time seeking relief on their "Motion Pursuant to Fed. R. Civ. R. 23(d)" (Docket Nos. 209-210). Like the first motion, the second motion addressed the events surrounding Mr. Sutter and other Fidelis employees' decisions to participate in the class action. Both motions are inextricably intertwined and seek relief pursuant to Rule 23(d). Therefore, Fidelis submits this Memorandum of Law and its supporting Declarations in response to both of Plaintiffs' Rule 23(d) motions.

## ARGUMENT

Mr. Sutter's vague allegations alone cannot sustain a Rule 23(d) motion, including one that seeks to void *all* opt-out forms submitted previously and to preclude all communications between Fidelis and its employees. As explained below, while Rule 23(d) prevents parties from communicating with potential class members in an abusive, coercive or misleading manner, it does not prevent parties like Fidelis from addressing its employees to reassure them of their freedom to participate in that action.

### I.

### RULE 23(d) PROTECTS CLASS MEMBERS AGAINST ONLY COERCIVE, ABUSIVE OR MISLEADING COMMUNICATIONS

Rule 23(d) provides courts with the "authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," including permitting courts to issue any order that may "protect class members and fairly protect the action," "impose conditions on the representative parties," or "deal with similar procedural matters." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Fed. R. Civ. P. 23(d). Rule 23(d) provides courts with this authority in part to safeguard against the potential for abuse of class members, including

protecting against misleading or abusive communications to class members that "pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Dziennik v. Sealift, Inc.*, 05 Civ. 4659, 2006 WL 1455464, at *3 (E.D.N.Y. May 23, 2006) (attached to DiMarco Decl. as Exhibit E).

However, courts do not retain "unlimited" discretion to fashion Rule 23(d) orders, and may intervene only where there exists "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil, Co.*, 452 U.S. at 101; *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986). *See also, In re FedEx Ground Package System, Inc. Employment Practices Litigation*, 06 Civ. 528, 2007 WL 3036891, at *5 (N.D. Ind. Oct. 12, 2007) (attached to DiMarco Decl. as Exhibit F). The burden remains at all times on the plaintiff to provide evidence sufficient to warrant a protective order. *See Bell v. Addus Healthcare, Inc.*, 06 Civ. 5188, 2007 WL 2752893, at *3 (W.D. Wash. Sept. 19, 2007) (attached to DiMarco Decl. as Exhibit G).

To the extent that a court finds a Rule 23(d) order warranted, that order must be "consistent with the policies of Rule 23," "carefully drawn" and "limit[] speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 101-02. *See also, Sorrentino v. ASN Roosevelt Center, LLC*, 584 F. Supp. 2d 529, 532 (E.D.N.Y. 2008) (Spatt, J.) (recognizing the *Gulf Oil* Rule 23(d) order standard); *Equal Employment Opportunity Commission v. Morgan Stanley & Co., Inc.*, 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002) (order should "balance the interest of the parties in presenting their respective positions and the interest of class members in being free from inappropriate influences"). Courts should not place restrictions on, or otherwise penalize a party for, engaging in communications not deemed to be misleading or abusive. *In re FedEx*, 2007 WL 3036891, at *7 ("The *Gulf Oil*

9

Court . . . discouraged limits on anything other than misleading or abusive communication."); *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (mere communication . . . without more, does not necessarily warrant limitations on [defendant's] speech").

To establish a "clear record," plaintiffs must demonstrate "the particular abuses by which [they are] threatened." *Gulf Oil*, 452 U.S. at 102. The "mere possibility of abuses" does not require a "communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Id.* at 104. Rather, plaintiffs must demonstrate that the communications were "misleading, coercive, or an improper attempt under Rule 23 by encouraging class members not to join the suit." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985); *In re Visa Check/Mastermoney Antitrust Litig.*, 96 Civ. 5238, 2006 WL 1025588, at *5 n. 3 (E.D.N.Y. Mar. 31, 2006) (remedial orders are appropriate only in those instances where a "communication at issue creates a 'likelihood' of abuse, confusion, or an adverse effect on the administration of justice") (attached to DiMarco Decl. as Exhibit H). These types of abusive communications include "communications [that] affect class members' decisions regarding whether to participate in the litigation," "undermine class members' confidence in class counsel or the court," or that "contain false or misleading statements about the litigation." *Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 296 (S.D.N.Y. 2008).

In the context of a class action involving an employer and its employees, courts have recognized an increased potential for coercion because the parties enjoy "an ongoing business relationship." *Morgan Stanley*, 206 F. Supp. 2d at 562 (quoting *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 99 Civ. 4567, 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001) (attached to DiMarco Decl. as Exhibit I)). *See also Wang v. Chinese News Daily, Inc.*, 236 F.R.D. 485, 488 (C.D. Cal. 2006) (finding the potential for coercion may be even more acute

10

where a defendant is the "individuals' employer[] and there is evidence that implicit and explicit threats were made linking participation in the lawsuit with job security").

Nonetheless, an employer-employee relationship by itself does not require a ban on communications. *McLaughlin v. Liberty Mutual Insurance Co.*, 224 F.R.D. 295, 298 (D. Mass. 2004) (citing *Basco v. Wal-Mart Stores, Inc.*, 00 Civ. 3184, 2002 WL 272384, at *4 (E.D. La. Feb. 25, 2002 (attached to DiMarco Decl. as Exhibit J)). The mere fact of an employee-employer relationship is insufficient to find coercion, absent evidence of abusive conduct or attempts to prevent participation in litigation. *Basco*, 2002 WL 272384, at *4. As the court ruled in *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478 (E.D. Pa. 1995), despite a heightened potential for coercion, a plaintiff must still demonstrate a clear record of "abuses by which [they are] threatened" and that an employee class member's "decision to participate in the action was not made on the basis of independent analysis of their own self interest." *Id.* at 490. *See also Jenifer v. Delaware Solid Waste Authority*, 98 Civ. 270, 1999 WL 117762, at *4 (D. Del. Feb. 25, 1999) (despite the existence of an ongoing employment relationship, courts still will not limit communications with the class unless the plaintiff can establish a "clear record of threatened abuses . . . that justifies [judicial interference]") (attached to DiMarco Decl. as Exhibit K). Plaintiffs have not demonstrated the required clear record here.

## II.

## PLAINTIFFS HAVE FAILED TO DEMONSTRATE A "CLEAR RECORD" OF COERCIVE, ABUSIVE, OR MISLEADING BEHAVIOR BY FIDELIS OR OTHERWISE DEMONSTRATE THAT FIDELIS INFLUENCED POTENTIAL CLASS MEMBERS' DECISIONS TO PARTICIPATE IN THE CLASS ACTION

Plaintiffs simply have not established any "clear record" of abusive behavior, threatened or actual, by Fidelis in conducting the November, 2008 meetings or in its actions thereafter. Plaintiffs have failed to cite even one case in which a court issued a protective order where an employer engaged in behavior similar to Fidelis. Instead, Plaintiffs could only cite cases where courts issued protective orders on the grounds that the defendant (1) engaged in egregious and scurrilous behavior, (2) sought to directly and unfairly influence the putative class members' decision to participate in a class action and/or (3) ignored previous court orders limiting communications:

- The employer in *Bowens* ignored previous court order prohibiting communications with potential class members and attempted to literally "buy off" potential class members. *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 62, 71-73 (E.D.N.Y. 2008) (Plaintiffs' Memorandum of Law, dated June 30, 2009 ("Pl. 1st Br."), p. 4; Plaintiffs' Memorandum of Law, dated July 2, 2009 ("Pl. 2d Br."), p. 2).

- The defendant in *Romano* threatened potential class members with the release of their and their family's private medical records if they failed to opt out of the class action. *Romano*, 253 F.R.D. at 297-98 (Pl. 1st Br., p. 5; Pl. 2d Br., p. 3).

- In *Sjoblom*, the employer interviewed potential class member employees about the lawsuit "under the pretext of a training session," "failed to inform the employees of their potential interest in the current lawsuit as opt-in plaintiffs," and required the employees to sign declarations written by the employer regarding the lawsuit. *Sjoblom v. Charter Communications, LLC*, 07 Civ. 0451, 2007 WL 5314916, at *1, 4 (W.D. Wis. Dec. 26, 2007) (Pl. 1st Br., p. 5) (attached to DiMarco Decl. as Exhibit L).

- The defendant in *Belt* mailed letters to potential class members that "discourage[d] absent class members from joining the suit" by suggesting "that the current action was an attack on the potential plaintiffs' status as a professional," and that the "suit could endanger the potential class members' job stability." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 666-67 (E.D. Tex. 2003) (Pl. 1st Br., p. 6; Pl. 2d Br., p. 3).

- In *Georgine*, attorneys for defendant sent multiple letters and advertisements to potential class members containing various misleading statements, including that opting out would be the only way to secure future compensation for asbestos-related injuries. *Georgine*, 160 F.R.D. at 490-91 (Pl. 1st Br., p. 5).

- In *Hampton Hardware*, the defendant wrote three letters to class members warning them that they may be liable for costs should they participate and urging them to disassociate themselves from the suit. *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994) (Pl. 1st Br., p. 5).

- In *Kleiner*, the defendant conducted a secret telephone campaign to persuade class members to opt out of the class. *Kleiner*, 751 F.2d at 1198 (Pl. 1st Br., pp. 5-6; Pl. 2d Br., p. 3).

Despite Plaintiffs' best attempts to state otherwise, Fidelis' actions can hardly be likened to any of the actions undertaken by the defendants in the cases Plaintiffs cite. In fact, other courts have refused to issue Rule 23(d) protective orders where employers directed multiple written and oral communications to potential class members.

For example, in *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D. Tex. 1997), the Texas District Court there failed to find any evidence to show that an e-mail announcement to, and subsequent meetings with, employee class members were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging putative class members not to join the suit, or any evidence to show that "the potential for abuse [was] so great as to warrant an interference with Defendant's right to engage in commercial speech with its employees." The court cited to an absence of any implicit or explicit threats accompanying the meetings or emails and found it significant that the declarations provided by plaintiffs in support of their Rule 23(d) motion attested only to "generalizations" and "the gist of" the meetings they attended. *Id. See also, McLaughlin*, 224 F.R.D. at 298 (dismissing Plaintiffs' belief that potential class members would feel "discouraged" as insufficient to limit communication). Of note in the *Burrell* case is the fact that court cited to a presentation that the company gave at the meetings as demonstrating a lack of evidence of discouraging case participation. *See Burrell*,

13

176 F.R.D. at 245. The parallel to the talking points used by Mr. Lane during the November, 2008 meetings is striking and persuasive evidence that, as in *Burrell*, there is no evidence that Fidelis in any way attempted to discourage class participation (*see* Lane Decl., Ex. A)

No reasonable interpretation of Fidelis' conduct could lead to the conclusion that Fidelis engaged in any coercive, abusive, or misleading behavior sufficient to warrant Rule 23(d) relief. Not one statement made by Mr. Lane affected the "class members' decisions regarding whether to participate in the litigation," or "undermine[d] class members' confidence in class counsel or the court," or "contain[ed] false or misleading statements about the litigation." *Romano*, 253 F.R.D. at 296.

Fidelis conducted its November, 2008 meetings with the clear aim to communicate to employees that they were free to participate in the class action without any fear of retaliation. Mr. Lane first ensured that Fidelis' supervisors knew not to discuss the lawsuit with their marketing representatives – that the lawsuit and their supervision of the marketing representatives should remain completely separate (Lane Decl., ¶7). Next, Mr. Lane met with Fidelis' marketing representatives, and at those meetings he provided clear instructions as to what the marketing representatives' options were with regard to joining the lawsuit and that they were free to participate in the lawsuit if they wanted (*Id.* ¶¶2, 9, 11-13). He also informed the marketing representatives that they could contact Frank & Associates, class counsel, with any questions (*Id.* ¶9). Mr. Lane never told any marketing representative to sign an opt-out form and no one at Fidelis ever provided a marketing representative with an opt-out form to sign (*Id.* ¶¶12-13). Mr. Lane specifically told the marketing representatives that Fidelis would not take any action whatsoever against any employee deciding to participate in the class action and that it would not affect their job security in any way (*Id.* ¶¶2, 9, 12-13). Indeed, current Fidelis

employees Shelly Durse, Edward Reilly, David Sutton and Heather Williams, who attended the Northeast Regional Office meeting with Mr. Sutter, each stated that they felt free at all times to participate in the lawsuit and that Mr. Lane took no action to prevent then from participating (*see* Durse Decl., at ¶¶6-9; Reilly Decl., at ¶¶4-6; Sutton Decl., at ¶¶5-6, 8-9; and Williams Decl., at ¶¶6-8).

Mr. Sutter's timing in raising the coercion issue also casts serious doubt on the credibility of his claims. Mr. Sutter raised the coercion issue seven months after he attended the meeting, but only weeks after Fidelis expressed to him its dissatisfaction about his job performance (Romero Aff., ¶11; Tucker Decl., ¶¶2-3). Further, Mr. Sutter also failed to identify in his affidavit what Mr. Lane said during the meeting that made him feel pressured, why he failed to express any concerns at the meeting or before submitting his opt-out form, and whether he spoke to any other employees about whether they felt intimidated or feared for their jobs.

Plaintiffs have failed to offer a "clear record" of "past abuse, or of an intention of future abuse," warranting relief. *McLaughlin*, 224 F.R.D. at 299. As made clear by the Declarations submitted with this Memorandum, the potential class members' "decision[s] to participate in the action was . . . made on the basis of independent analysis of their own self interest." *Georgine*, 160 F.R.D. at 490. Fidelis made sure to communicate in a manner that would assure employees considering whether to participate that they would be free from any retaliatory action. *See Morgan Stanley*, 206 F. Supp. 2d at 563 (explaining proper safeguards to include in a communication to potential class members, including communicating that "there is a pending lawsuit which they may join, and that it is unlawful for [the employer] to retaliate against them if they do").

Fidelis would not object if the Court were to permit Mr. Sutter to withdraw his opt-out notice and become a class member. However, Fidelis objects strenuously to any order granting the other relief Plaintiffs seek in their Rule 23(d) motions because they have failed to satisfy their burden to demonstrate a clear record of abuse and because Fidelis' actions were completely appropriate at all times.

## CONCLUSION

For the reasons stated, the Court should deny Plaintiffs' Rule 23(d) Motions and the Court should issue such other and further relief as it deems just and proper.

Dated: July 31, 2009
New York, New York

> Respectfully submitted,
>
> MINTZ LEVIN COHN FERRIS
> GLOVSKY and POPEO, P.C.
>
> By: _____
> MINTZ LEVIN COHN FERRIS
>   GLOVSKY and POPEO, P.C.
> Jennifer F. DiMarco (JF-9146)
> e-mail: jfdimarco@mintz.com
> Michael S. Arnold (MA-8541)
> e-mail: msarnold@mintz.com
> The Chrysler Center
> 666 Third Avenue
> New York, New York 10017
> (212) 935-3000
> fax (212) 983-3115

4656615v.11